IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE STATE CONFERENCE OF THE NAACP et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 3:23-cv-00832 |
| v. | ) ) ) | JUDGE ELI RICHARDSON JUDGE ERIC E. MURPHY |
| WILLIAM B. LEE et al., | ) ) | JUDGE BENITA Y. PEARSON |
| Defendants. | ) ) ) | |

**INITIAL CASE MANAGEMENT ORDER**

**A.    JURISDICTION:**  The court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1357, and 42 U.S.C. § 1983. It also has jurisdiction to grant the declaratory relief requested under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

**B.    BRIEF THEORIES OF THE PARTIES:**

For Plaintiffs: The redistricting plans passed by the 112th General Assembly of the State of Tennessee violate the Fourteenth and Fifteenth Amendment constitutional rights of Plaintiffs. The newly drawn Congressional Districts CD-5, CD-6, and CD-7, which split apart Davidson County and Nashville into three districts, are unconstitutional racial gerrymanders and a product of intentional discrimination by the General Assembly. The newly drawn State Senate District SD-31 in Shelby County is an unconstitutional racial gerrymander and a product of intentional discrimination by the General Assembly. In light of the foregoing, Plaintiffs seek declaratory relief and a permanent injunction that prohibits Defendants from calling, holding, supervising, or certifying any further election in the challenged districts under the redistricting plans passed by the 112th General Assembly. Plaintiffs respectfully request that the Court order Defendants to cure the defects

1

evident in the newly drawn Congressional Districts CD-5, CD-6, and CD-7 in Davidson County and the defects evident in the drawing of State Senate District SD-31 in Shelby County.

For Defendants: Contrary to Plaintiffs' baseless allegations, the district lines were *not* drawn to discriminate against minority voters or gerrymander those voters into specific districts. This lawsuit should be dismissed because Plaintiffs cannot meet their extraordinary burden to prove racial animus and predominance, and because they unreasonably delayed bringing this suit for over eighteen months.

  C.  **ISSUES RESOLVED:** Venue.

  D.  **ISSUES STILL IN DISPUTE:** Jurisdiction; standing; constitutionality of aspects of the 112th General Assembly's redistricting plans; and relief.

- Jurisdiction: Plaintiffs assert federal constitutional claims and therefore assert that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1357. Defendants do not contest jurisdiction generally but do assert that Governor Lee enjoys immunity from suit.

- Standing: Plaintiffs maintain that they have standing to bring all of the asserted claims against all Defendants listed in the Complaint. Defendants contend Plaintiffs lack standing to sue Governor Lee.

- Laches: For reasons explained in Defendants' Motion to Dismiss, Defendants contend that all relief sought is barred by the doctrine of laches. Plaintiffs submit that the doctrine of laches has no application here.

- Constitutionality: As stated above, Plaintiffs challenge the constitutionality of the newly drawn Congressional Districts CD-5, CD-6, and CD-7 and of the newly drawn State Senate District SD-31, as intentionally discriminatory and as

2

impermissible racial gerrymanders under the Fourteenth and Fifteenth Amendments of the U.S. Constitution. Defendants maintain that Congressional Districts CD-5, CD-6, and CD-7 and State Senate District SD-31 are constitutional.

- Relief: The parties dispute the scope of the relief required, if any.

E.  INITIAL DISCLOSURES: The parties shall exchange initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before November 9, 2023.

F.  CASE RESOLUTION PLAN AND JOINT STATUS REPORTS:

The parties are encouraged to consider the Alternative Dispute Resolution options provided in Local Rules 16.02 through 16.05. If the parties do not propose a detailed plan for resolution of the case in their proposed initial case management order, the Court will establish case resolution plan requirements. Approximately fourteen (14) days after the conclusion of fact discovery, the parties shall submit a joint report confirming that the parties made a good faith attempt to resolve the case. The joint report shall also state whether the parties believe ADR might assist in resolution of the case. If a judicial settlement conference is requested in either joint report or separately, the parties shall also state (i) the reasons why mediation is not feasible; (ii) their proposed timing for scheduling of the settlement conference; and (iii) any preference of a particular Magistrate Judge to conduct the settlement conference.

G.  DISCOVERY: Discovery shall commence immediately upon entry of this Order. Until and including January 15, 2023, the parties have agreed to the following, (Stipulation Regarding Discovery Procedures, ECF No. 39):

1. The parties may serve written discovery, including interrogatories and requests for production of documents, after the initial case management conference scheduled by this Court at present for October 26, 2023. (ECF No. 40). The Party receiving written discovery requests will serve responses and objections within thirty (30) days as required by Federal Rule of Civil Procedure Rule 26(b).

2. No document production will be required prior to January 15, 2024.

3. No depositions will be noticed or scheduled prior to January 15, 2024.

4. Between the date of this stipulation and January 15, 2024, the parties agree to meet and confer regarding the scope of any asserted grounds of privilege or other bases for nondisclosure, custodians, search terms to be used in electronic discovery, running the search terms, and the number of hits produced by agreed-upon searches.

After January 15, 2024, the parties agree that discovery should proceed normally, and as follows:

- Modification of case management order: a motion to modify must be filed at least seven (7) days in advance of the earliest impacted deadline.
- Deadline to complete fact discovery: July 8, 2024.
- Deadline for opening expert reports where the disclosing party bears the burden of proof: July 25, 2024.
- Deadline for rebuttal expert reports: September 12, 2024.
- Deadline for reply to rebuttal reports: October 25, 2024.
- General Election: November 5, 2024.
- Deadline for expert depositions: December 20, 2024.
- Filing of supplemental expert reports: December 20, 2024 (however, this is dependent on the State's relevant precinct-level election results being available by December 5, 2024).
- Deadline for limited depositions on supplemental expert report topics: January 10, 2025.
- Deadline to file motions for summary judgment and *Daubert* motions: January 24, 2025.
- Deadline to file responses to motions for summary judgment and *Daubert* motions: February 14, 2025.
- Deadline to file replies to motions for summary judgment and *Daubert* motions: February 21, 2025.
- Deadline for joint pretrial order: April 1, 2025.
- Deadline for motions in limine: April 1, 2025.
- Proposed trial date: April 21, 2025.

A party may not bring a discovery dispute to the Court for resolution before counsel for that party has held a telephonic or in-person discussion with counsel for every one of the parties adverse to it with respect to the dispute (which, in the case of multiple adverse parties, may occur separately with different adverse parties) and has made a good-faith effort to resolve the dispute.

Discovery disputes that cannot be resolved after the required discussion(s) should be brought promptly to the attention of the Court via a request for a discovery conference. It will be within the Court's discretion whether to allow for the filing of discovery-related motions. In connection with any discovery conference or discovery motion, the applicable parties shall file a joint discovery dispute statement, which describes the specific discovery request(s) in dispute and details each party's position with supporting facts and legal authorities. The joint discovery dispute statement shall certify that counsel for every applicable party held the aforementioned telephonic or in-person discussion(s) and made a good faith effort to resolve each discovery dispute presented in the statement. If the joint statement is sufficiently detailed, any party may adopt by reference the joint statement for purposes of Local Rule 7.01(a)(2) or (a)(3), but must clearly state in the filing (made in accordance with any timing requirements set forth in Local Rule 7.01(a)(3)) that the joint statement is adopted as the party's memorandum of law or response, as the case may be.

The parties reserve the right to separately negotiate a stipulated protective order and confidentiality agreement, to the extent one is necessary.

H. **MOTIONS TO AMEND OR TO ADD PARTIES:** Any motions to amend or to add parties shall be filed by no later than April 1, 2024; and must comply with Fed. R. Civ. P. 15 and Local Rules 7.01 and 15.01.

I. **DISCLOSURE AND DEPOSITIONS OF EXPERTS:** Parties bearing the burden of proof on an issue will identify and disclose all expert witnesses and expert reports on or before July 25, 2024. September 12, 2024, is the deadline for the parties to identify and disclose all rebuttal expert witnesses and rebuttal reports. October 25, 2024, is the deadline for the parties to disclose all replies to expert witness rebuttal reports. Expert depositions related to the expert reports shall be completed by December 20, 2024. The Court permits the parties to file

supplemental expert witness reports by December 20, 2024 to take into account the results of the November 5, 2024, General Election, once the State's relevant precinct-level election results are available to the general public. As to any expert reports taking into account the results of the November 5, 2024, General Election, the Court permits expert depositions, limited to the topics addressed in the supplemental expert reports, to take place, if necessary, after December 20, 2024, with a deadline of January 10, 2025 for any limited depositions.

All supplemental expert disclosures, which specifically include, but are not limited to, any supplemental information to expert reports, must be made in accordance with Rule 26(a) and (e) and the relevant Local Rules for the Middle District of Tennessee. Supplemental expert opinions or other expert disclosures not timely disclosed may be excluded at trial. *See* Local Rule 39.01(c)(5)(C).

**J.** **SUBSEQUENT CASE MANAGEMENT CONFERENCE:** Subsequent case management conferences will be scheduled upon request of the parties, to address the following issues including, but not limited to: status of discovery (including any known or anticipated discovery issues or disputes); prospect for settlement (including propriety of ADR); and any other appropriate matters. Plaintiffs' counsel shall initiate the call.

**K.** **ELECTRONIC DISCOVERY:** The parties have reached agreement on how to conduct electronic discovery and have submitted a proposed agreed order with an accompanying motion for approval by this Court, (Exhibit A).

Regarding any costs associated with electronic discovery, Defendants propose the parties follow the Costs as outlined in Middle District of Tennessee's Administrative Order No. 174-1, In Re: Default Standard For Discovery of Electronically Stored Information, p. 3 (Sept. 12, 2018).

Plaintiffs respectfully request this paragraph not be included in the ESI Order. Plaintiffs' position is that the costs, including attorney fees and vendor fees, of eDiscovery should be borne by the producing party, as is the norm. Plaintiffs do not believe the language related to costs in AO No. 174-1—namely permitting the Court to apportion e-discovery costs upon a showing of good cause—is appropriate in the context of this action in which private citizens and certain non-profit organizations with limited resources bring constitutional claims against the State and its public officials in their official capacities to vindicate what Plaintiffs believe are serious constitutional violations. Plaintiffs have, in good faith, already compromised with Defendants on the schedule of discovery and are willing to continue to compromise on the scope of their requests to reduce discovery burdens on Defendants. Nevertheless, Plaintiffs are entitled to the discovery required to prove their case and should not be threatened with financial penalty for bringing this action. Moreover, the threat of apportionment in a case like this one would have a chilling effect on other claimants of limited resources seeking to vindicate their constitutional rights.

Defendants maintain that the language related to costs in AO No. 174-1 is appropriate in the context of this case and should be included as Paragraph X in the ESI Order. This provision is the status quo in the Middle District of Tennessee. And, in this context, simply safeguards State funds against unreasonably burdensome e-discovery costs secondary to poorly tailored discovery requests. Should such a situation arise, the Court would consider the concerns raised by Plaintiffs in determining whether reapportionment is appropriate. Defendants urge the Court to refrain from considering the question of reapportionment before it is ripe by including the language in AO No. 174-1 in Paragraph X of the ESI Order.

This court adopts Defendant's position in following the costs as outlined in Middle District of Tennessee's Administrative Order No. 174-1, In Re: Default Standard For Discovery of

Electronically Stored Information, p. 3 (Sept. 12, 2018). That said, the court will interpret this administrative order consistently with the requirements of Federal Rule of Civil Procedure 26(b)(2). The parties' Motion for Entry of Agreement Governing Discovery of Electronically Stored Information (Doc. 45) is granted. Exhibit 1B - Defendants' Version ESI Agreement to the motion that includes Paragraph X will now be entered by the Court.

  **L.**   **INADVERTENT DISCLOSURE OF PRIVILEGED MATERIALS**: The disclosure of any privileged material, or material otherwise protected or exempted from disclosure, shall not operate as a waiver or impairment of any claim of privilege or protection, including but not limited to the attorney-client privilege, work product protection, or governmental privileges, if:

 1. The disclosure is inadvertent and made in connection with this litigation; and

 2. The holder of the privilege or protection took reasonable precautions to prevent disclosure and took reasonably prompt measures to rectify the error.

 If there is an inadvertent disclosure of purported privileged or protected materials, then the producing party shall notify, in writing, the receiving party that such material has been produced within fourteen (14) days of it becoming aware of such inadvertent production. Upon receiving written notice from the producing party that privileged or protected material has been produced—and except when the receiving party disputes the claim of privilege or protection—the receiving party shall take all reasonable efforts to return or destroy all such material.

 Likewise, any party receiving material that it believes may have been inadvertently produced that includes privileged or protected information shall promptly notify the producing party. Within fourteen (14) days after such notification, the producing party may request in writing that such materials be returned or destroyed. Upon such written request—except when the party or parties receiving the request disputes the claim of privilege or protection—any materials that

the producing party deems to contain inadvertently disclosed materials shall be promptly returned to the producing party or destroyed. All copies—electronic or otherwise—shall likewise be returned or destroyed, and the parties agree that no further copies of the inadvertently disclosed material will be made. If the producing party does not request the return or destruction of material within fourteen (14) days after receiving notice that it produced potentially privileged material, the producing party waives any claim of privilege or protection as to the material.

If inadvertently produced privileged or protected material is contained within an item that contains otherwise discoverable material, the parties recognize that the party receiving the request may not be able to return or destroy only the portion of the item containing privileged or protected material. In the event that the party receiving the request is not able to reasonably separate the privileged or protected material for destruction or return, the party receiving the request shall destroy or return the privileged or protected information along with the discoverable portions of the material, and the producing party shall provide the requesting party with a replacement copy of the material that is not privileged or protected, and is otherwise discoverable, within fourteen (14) days of sending the request for return or destruction of the inadvertently disclosed material.

If a receiving party disputes the producing party's assertions of privilege or protection with respect to the disclosed material, such material shall be sequestered and retained by and under the control of the receiving party for the purpose of seeking determination of the issue from the Court. If the Court determines that privilege or protection has been waived or that the material at issue is not subject to any applicable privilege or protection, the receiving party may use the material for any purposes otherwise permitted by rule or law. If the Court determines that the inadvertently disclosed material is subject to an applicable privilege or protection, the receiving party must return or destroy the material at issue.

**M.     MODIFICATION OF CASE MANAGEMENT ORDER:** Any motion to modify the case management order or a case management deadline shall be filed at least seven (7) days in advance of the earliest impacted deadline. Unless a joint motion, the motion for modification must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether there is any objection to the requested modification or extension. The motion for modification must also include: (i) the trial date and all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review one or more previous case management orders in consideration of the motion and (ii) a statement on whether the requested extension will still conform to the requirements of Local Rule 16.01(h)(1) that no dispositive motion deadline, including response and reply briefs, shall be later than ninety (90) days in advance of the trial date or if not, the reasons for requesting a different timeline. Motions for extensions should also detail the moving party's efforts at diligently complying with the originally scheduled deadline and the facts demonstrating good cause for modification of the deadline as required by Fed. R. Civ. P. 16(b)(4).

**N.     ESTIMATED TRIAL TIME AND TARGET TRIAL DATE:** The bench trial of this action is expected to last approximately fifteen (15) trial days and begin no earlier than April 21, 2025. Local Rule 16.01(h)(1) calls for not setting dispositive motion deadlines including response and reply briefs later than ninety (90) days in advance of the target trial date. Given the unique nature of this case, Plaintiffs' request that the Court truncate the 90-day timeline under Rule 16.01(h)(1) to allow for a shorter timeline between the briefing on the motion for summary judgment (completed by February 21, 2025), and the target trial date, (April 21, 2025) is granted.

It is so **ORDERED.**

/*s*/  Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE


/*s*/ Eric E. Murphy
ERIC E. MURPHY
UNITED STATES CIRCUIT JUDGE


/*s*/ Benita Y. Pearson
BENITA Y. PEARSON
UNITED STATES DISTRICT JUDGE

APPROVED FOR ENTRY:

Dated: November 1, 2023

**Counsel for Plaintiffs**
JEFFREY LOPERFIDO*
MITCHELL D. BROWN*
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Tel.: 919-323-3380
jeffloperfido@scsj.org
mitchellbrown@scsj.org

PHILLIP F. CRAMER
Sperling & Slater
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
Tel.: 312-224-1512
pcramer@sperling-law.com

GEORGE E. MASTORIS*
MICHELLE D. TUMA*
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166
Tel.: 212-294-6700
gmastoris@winston.com
mtuma@winston.com

**Counsel for Defendants**
ADAM K. MORTARA (BPR# 40089)
Lawfair LLC
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

/s/_____
POOJA CHAUDHURI[+]
EZRA D. ROSENBERG[+]
JON GREENBAUM[+]
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
Tel.: 202-662-8600
pchaudhuri@lawyerscommittee.org
erosenberg@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org

[+]*Admitted to the Bar of the Middle District of Tennessee*
**Admitted Pro Hac Vice*

/s/_____
RYAN NICOLE HENRY (BPR# 40028)
Assistant Attorney General
WHITNEY HERMANDORFER (BPR# 041054)
Assistant Solicitor General
MIRANDA H. JONES (BPR# 036070)
Senior Assistant Attorney General
PHILIP HAMMERSLEY
Assistant Solicitor General
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 532-2935
ryan.henry@ag.tn.gov
whitney.hermandorfer@ag.tn.gov
miranda.jones@ag.tn.gov