IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| TENNESSEE STATE CONFERENCE OF THE NAACP et al., | ) ) ) | |
| Plaintiffs, | ) ) | No. 3:23-cv-00832 |
| v. | ) ) ) | JUDGE ELI RICHARDSON JUDGE ERIC E. MURPHY |
| WILLIAM B. LEE, et al., | ) ) | JUDGE BENITA Y. PEARSON |
| Defendants. | ) ) ) | |

**[PROPOSED] ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Pursuant to Federal Rules of Civil Procedure 26(c) & 29(b), this Stipulated Order Regarding Discovery of Electronically Stored Information ("Stipulated ESI Order") reflects the stipulated agreement made by and between counsel for Plaintiffs and counsel for Defendants (collectively, the "Parties"), in connection with the discovery of electronically stored information.

WHEREAS, counsel for the Parties have met and conferred regarding discovery of electronically stored information ("ESI");

WHEREAS, the Parties have reached agreement on issues discussed regarding the discovery of ESI;

WHEREAS, the Parties have entered into this Stipulation to facilitate the just, speedy, and cost-efficient conduct of discovery involving ESI, and to promote, to the fullest extent

possible, the resolution of disputes regarding the discovery of ESI and privileged materials without Court intervention;

**IT IS HEREBY ORDERED** that:

**I. Overview**

    A. The Parties are bound by and subject to the terms of this Stipulated ESI Order.

    B. Cooperation. The Parties shall attempt to conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with Federal Rules of Civil Procedure 1 and 26(g)(1); producing ESI in accordance with Federal Rule of Civil Procedure 34; and by meeting and conferring in good faith on topics such as potentially relevant data sources, search methodologies, appropriate search terms, identifying custodians of relevant ESI, and such other issues as may arise during the course of discovery.

**II. Definitions**

    A. "Defendant" as used herein shall mean William B. Lee, in his official capacity as Governor of the State of Tennessee; Tre Hargett, in his official capacity as Secretary of State of the State of Tennessee, Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee; the State Election Commission, and Donna Barrett, Judy Blackburn, Jimmy Eldridge, Mike McDonald, Secondra Meadows, Bennie Smith, and Kent Younce, in their official capacities as members of the State Election Commission.

    B. "Document" is defined as documents or ESI as set forth in Federal Rule of Civil Procedure 34(a)(1)(A).

C. "Parties" refers to all Plaintiffs and all Defendants, as well as their officers, directors, employees, and agents.

D. "Plaintiffs" as used herein shall refer to the Tennessee State Conference of the NAACP; League of Women Voters of Tennessee; the Equity Alliance; Memphis A. Philip Randolph Institute; African American Clergy Collective of Tennessee; Judy Cummings; Brenda Gilmore; Ophelia Doe; Freda Player; and Ruby Powell-Dennis.

E. All other terms used herein shall be defined as they are in the Sedona Conference Glossary: E-Discovery & Digital Information Management (Fifth Edition). *See* The Sedona Conference Glossary: eDiscovery & Digital Information Management, Fifth Edition, 21 SEDONA CONF. J. 263 (2020).

**III. Custodians**

A. To the extent such ESI, documents, and things exist and subject to the Parties' objections to such production and the resolution of those objections, the Parties shall produce responsive, non-privileged ESI, documents, and things from a list of custodians that the Parties will attempt to agree upon. The Parties will cooperate with each other in advising which of their custodians are likely to have responsive information in their possession, custody, or control.

B. The Parties will be responsible for identifying, searching, and producing from, all non-custodial data sources (including, but not limited to, databases, information archives, and shared drives) that are reasonably likely to have responsive information.

IV. Preservation and Production of Documents

   A. Preservation

      1. The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

      2. This Stipulated ESI Order does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law, pursuant to a court order,, or in response to other anticipated litigation.

      3. Section IV.B.1 is intended only to limit the Parties' affirmative preservation obligations under the Federal Rules of Civil Procedure.  It should not be construed to impart an affirmative obligation to preserve categories of ESI not listed in Section IV.B.1.

   B. Limitations on Obligations to Preserve.  For purposes of this action, the scope of the Parties' preservation obligations is limited as described in this section.

      1. ESI.  The Parties do not need to take specific, affirmative steps to preserve for purposes of this litigation the following categories of ESI:

         a) Delivery or read receipts of e-mail;

         b) Logs or other data from video-conferencing (including, *e.g.*, Teams or Zoom) or instant messaging tools involving (1) counsel of record for the Plaintiffs in this litigation (and their staff) and/or (2) counsel of record for Defendants in this litigation (and their staff);

c) Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

d) Internally facing server system logs;

e) Externally facing or hosted file sharing system logs;

f) System data from photocopiers or fax machines;

g) Auto-saved copies of electronic documents;

h) Deleted, slack, fragmented, or other data only accessible by forensics;

i) Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

j) Logs of or other data from audio calls (including, *e.g.*, landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP")) made to or from (1) counsel of record for Plaintiffs in this litigation (and their staff) and/or (2) counsel of record for Defendants in this litigation (and their staff); and

k) Voicemail messages on the voicemail systems of (1) counsel of record for Plaintiffs in this litigation (and their staff) and/or (2) counsel of record for Defendants in this litigation (and their staff).

2. Duplicates.  When duplicate copies[1] of relevant ESI exist in more than one location, this Stipulated ESI Order does not require a Party to preserve all duplicates as follows:

   a) ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order *provided that* duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

   b) ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order *provided that* duplicate copies of relevant ESI have been preserved in another reasonably accessible location.  However, if a Party knows that relevant ESI exists *only* on a Party's Backup System, the Party will take reasonable steps to preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced.  If the

---

[1] "Duplicates" in the context of ESI are copies of identical documents identified with matching MD-5 hashes, which is a mathematically-calculated 128-bit value used to create a unique identifier for an electronic file.

Parties cannot reach agreement, they will seek a ruling from the Court.

3. Documents Created by Counsel of Record. The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created by and, if shared with any other(s), exchanged *solely among*: (a) counsel of record for Plaintiffs in this litigation (and their staff) and/or (b) counsel of record for Defendants in this litigation (and their staff).

C. The Parties will not seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to Section IV.B above. As provided in Section IX below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

**V. Production Format for ESI**

A. Production Format and Numbering

1. Black and white content shall be scanned or converted to single page Tagged Image File Format ("TIFF"), using CCITT Group IV compression at 300 d.p.i. and that accurately reflects the full and complete information contained in the original document. One image file shall represent one page of the document. Color content shall be produced as JPEG files at 300 d.p.i. using a high-quality setting. Nothing in this provision prevents a Party from scanning, converting, and/or producing documents or content as color

images. Images shall be accompanied by an Opticon/Concordance image load file (.opt) which accurately conveys document unitization. Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall, to the extent reasonably practicable, also be imaged so that this information is captured in the produced image file. Each TIFF or JPEG image must be named according to its Bates-number, i.e., [Bates-number].[extension].

2. For ESI and scanned hard copy paper documents, the text of all pages in the document must be saved as one file. If the extracted text of a native document does not exist or does not represent the entire document, Optical Character Recognition ("OCR") will be provided instead.

3. All productions will provide a consistent load file with the same number and order of fields regardless of the types of documents in the production.

4. All images (*e.g.*, TIFF, JPEG) will be produced in a directory labeled IMAGES. Subdirectories may be created so that one directory does not contain more than 5000 files.

5. All native files (with the proper Windows-associated extension) will be produced in a directory labeled NATIVE. Subdirectories may be created so that one directory does not contain more than 5000 files.

6. An image cross reference file and a load file containing all required metadata fields will be produced in a directory labeled DATA.

7. All extracted text and/or OCR will be produced in a directory labeled TEXT. OCR is searchable text generated for scanned documents or native

files that is in ASCII format, where all pages in the document will be represented in one file. The Parties will provide a text file for all documents, even if the size of the file is zero. Subdirectories may be created so that one directory does not contain more than 5000 files.

8. Except for native files, the Parties will produce responsive documents Bates-stamped with a prefix to indicate the Party producing the documents.  For native files, which cannot be Bates-stamped, the Parties will rename the file with its corresponding Bates-number [Bates-number].[extension] with a placeholder image numbered and endorsed as appropriate for that record and including "RECORD PRODUCED AS NATIVE FILE" and the original file name.  The bates number shall be unique, have a consistent format within and between productions, have the same number of digits, and use leading zeros where necessary.

B. <u>Document Text</u>.  All unredacted documents should be provided with complete document-level extracted text files. In the event a document contains text which is redacted, text files consisting of OCR should be provided for any un-redacted portions of the documents. Document text files should be provided in a Full text folder, with the beginning production number and file path location of the text provided in the .dat (located in the Data folder).

C. <u>Spreadsheets</u>.  Excel or other types of spreadsheets shall be produced as native files with all cells unlocked.  For each Excel or spreadsheet file, a placeholder image as described for native files in Section V.A.8 above must be included in the production.

D. <u>Presentations</u>. PowerPoint files shall be produced as both (1) as color images with extracted text and (2) as native files with all notes unaltered and viewable. For each PowerPoint, a placeholder image as described for native files in Section V.A.8 above must be included in the production.

E. <u>Audio and Video Files</u>. Audio files and video files shall be produced as native files unless the native form is a proprietary format, in which case the file(s) should be converted into a non-proprietary format that can be played using Windows Media Player. For each audio or video file, a placeholder image as described for native files in Section V.A.8 above shall be included in the production.

F. <u>Social Media Content</u>. The Parties will meet and confer to discuss production format if a producing party identifies social media content that is potentially responsive to a request.

G. <u>Text Messages</u>. The Parties will meet and confer to discuss production format if a producing party identifies text messages that are potentially responsive to a request.

H. <u>Other Documents, Things, and ESI</u>. For production of tangible things and production of information from a structured database, proprietary software, vendor-managed software, or other source from which native production is not reasonably practicable, the Parties will meet and confer before making any production to attempt to agree on a reasonable and proportional form of production that maintains the integrity of the tangible things or documents.

I. <u>Embedded Files</u>. In cases where embedded material does not render in a fully-reviewable manner in the parent document, embedded files will be produced as family groups. Embedded files should be assigned production numbers that directly follow the production numbers on the documents within which they are embedded.

J. <u>Color</u>. Documents containing color need not be produced in color unless necessary to legibly read or understand the meaning or content of the document. The producing Party shall cooperate with a Party who reasonably requests re-production of a document in color, in which case the document shall be produced in color 24-bit JPEG or native format.

K. <u>Load File Format</u>. The Parties shall provide a metadata load file compatible with industry standard e-discovery review and analysis platforms and containing the fields specified in Appendix A. Typically, this is a Concordance-style DAT file."

L. The Parties will meet and confer regarding a different production format, such as native files, should the producing party find that it is not possible or unduly burdensome to adhere to the production format specified in this section for certain documents, in light of the format in which the documents are maintained in the ordinary course of business.

M. <u>Metadata to be Produced</u>. The Parties will produce the metadata specified in Appendix A, to the extent that such information metadata exists and that collecting and producing such information is not unduly burdensome based on the resources of the producing party.

N. <u>Deduplication</u>. The Parties shall make reasonable efforts to deduplicate ESI. If not unduly burdensome, ESI shall be globally deduplicated across all custodial and non-custodial sources. Documents are considered exact duplicates if a document family or stand-alone file has a matching hash value (e.g., MD5 or SHA-1) as compared against the same document type (i.e., family or stand-alone file). The names of all custodians who were in possession of a document prior to deduplication will be populated in a metadata field, consistent with the specifications above in Appendix A.

O. <u>Email Threading</u>.  The Parties may use email thread suppression. As used in this Stipulated ESI Order, email thread suppression means reducing duplicative production of email threads, with the effect of producing the most inclusive email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates. Duplicative emails withheld under this paragraph need not be included on the producing party's privilege log.

P. <u>Time Zone</u>: When producing documents, Central Standard Time  ("CST") shall be selected as the time zone.

Q. The Parties will remove encryption or password protection from all ESI produced. If that is not possible, the producing party will provide passwords or assistance needed to open encrypted files.

R. In the event that any of the requirements of Part V of this agreement prove unduly burdensome as to any party or as to any particular materials, the requesting and producing parties will confer in good faith to identify less burdensome alternative production formats that are reasonable and proportional to the needs of the case.

VI. **Production Format for Hard Copy Documents**

A. Hard copy documents shall be produced as a single TIFF file per page with complete document-level OCR text files. The unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. The relationship of documents (including attachment relationship and file associations) shall be maintained throughout the scanning or conversion process.

B. Oversized documents must be produced as PDF files, JPEG images, or in hard copy form so as to retain the resolution and scale of the original document.

VII. **Production Specifications**

A. Responsive documents and ESI will be produced via .zip file(s) uploaded to an electronic file transfer site, in accordance with the written instructions provided by counsel for the Requesting Party or as otherwise agreed by the Parties. The .zip file(s) shall be encrypted, and the Producing Party will provide a decryption key in a communication separate from the production itself.

B. The Parties will remove encryption or password protection from all ESI produced. If that is not possible, the producing party will provide passwords or assistance needed to open encrypted files.

## VIII. Third-Party Discovery

A. A Party that issues a non-party subpoena ("Issuing Party") will include a copy of this Stipulated ESI Order with the subpoena and will request that non-parties produce documents in accordance with the specifications set forth herein. Non-parties may assert any objections they maintain to the terms of this Order and the Court will separately rule on any such objections.

B. The Issuing Party will produce any documents obtained under a subpoena to all other Parties. Any documents that the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which the Issuing Party received such documents, except as subject to the Bates-stamping requirements of Section V.A.8. If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

## IX. Privileged Documents, Things, and ESI

A. General. If any discovery request appears to call for the production of documents, things, or ESI covered by Section IV.B., the responding party is not required to produce or identify such information on a privilege log. However, if a party preserves relevant documents, things, or ESI covered by Section IV.B., in order to support a claim or defense in this case, the Party shall produce such information or identify it on a privilege log notwithstanding this subsection.

B. The production of ESI shall not constitute a waiver of the attorney-client privilege, work product protection, or any other applicable privilege or protection, even though there is a failure to take reasonable steps to prevent production of

information covered by the attorney-client privilege or work product protection, or a failure to take reasonable steps to rectify the error.

C. Privilege Logs and Redaction.

1. Redaction. Where a discovery request appears to call for the production of documents, things, or ESI that contain both privileged and non-privileged responsive information, the responsive information shall be produced, but the privileged information may be redacted.

2. For all documents withheld based on privilege or other protection, the Parties will provide logs that comply with the requirements under the Federal Rules of Civil Procedure. At a minimum, the privilege log must contain the following:

   a) A unique and logical document identification number;
   b) Date the document was prepared or created;
   c) Document type;
   d) Name and title of author(s)
   e) Custodian;
   f) Name and title of recipient(s) (including all individuals in the "to" or "cc" or "BCC" fields);
   g) Name and title of any attorney(s) included in the communication;
   h) The privilege or protection asserted;
   i) The basis for the privilege or protection asserted;

    j) A description of the document that, without revealing information itself privileged or protected, will enable the requesting party to assess the claim;

    k) Purpose of preparing the document.

  3. The Parties agree that communications between attorneys and clients regarding the current lawsuit and not shared with any third parties may be withheld if privileged and do not need to be logged.

  4. Email Threads.  An email thread for which a party claims a privilege may be logged in a single entry provided that such entry identifies all senders and recipients appearing at any point in the thread, and provided that any included emails or portions of emails that are not subject to privilege are properly produced.

  5. Production Timeline.  Privilege logs may be produced on a rolling basis, with reasonable efforts made to produce the privilege log within 60 days after each associated production. If any log is produced less than 30 days before the close of discovery, the receiving party may, notwithstanding the date of the close of discovery, review and register complaints about said log(s) no later than 30 days after the date of receipt and shall have the right to have those complaints resolved and have any non-privileged documents produced.

## X. Costs

 A. The costs, including attorney fees and vendor fees, of eDiscovery normally shall be borne by the producing party.  However, the Court may apportion the

costs of eDiscovery upon a showing of good cause. The Court, on motion of one of the parties, will consider the following non-exclusive factors in determining whether any or all eDiscovery costs should be borne by the requesting party: (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production compared to the amount in controversy; (4) the total cost of production compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits of obtaining the information.

Based on the foregoing, **IT IS SO ORDERED.**

DATED: November 13, 2023

        s/ Eli Richardson
        **ELI RICHARDSON**
        **UNITED STATES DISTRICT JUDGE**

        s/ Eric E. Murphy
        **ERIC E. MURPHY**
        **UNITED STATES CIRCUIT JUDGE**

        s/ Benita Y. Pearson
        **BENITA Y. PEARSON**
        **UNITED STATES DISTRICT JUDGE**

# APPENDIX A

| Field Name | Definition |
|---|---|
| **Begin_Bates** | Bates number for the first image of a document (or the Bates number of the placeholder page for a native document). |
| **End_Bates** | Bates number for the last image of a document (or the Bates number of the placeholder page for a native document). |
| **Begin_Attach** | <u>Only</u> for document families,[2] provide Bates number for the first image of the first attachment or embedded file. Leave this field blank if there is no document family. |
| **End_Attach** | <u>Only</u> for document families, provide Bates number for the last image of the last attachment or embedded file. Leave this field blank if there is no document family. |
|  | Bates number of the parent document (filled in only for "child" documents). |
| **PgCount** | The number of images produced for this document (1 for placeholder). |
| **All Custodians** | Name of all custodians who had a copy of the document before deduplication. |
| **From** | "From" field in email. |
| **To** | "To" field in email. |
| **CC** | "CC" field in email. |
| **BCC** | "BCC" field in email. |
| **Subject** | "Subject" field in email. |
| **Attachments** | File names of the attachments. |
| **DateSent** | DateSent field from email (format: 9/28/2012). |

---

[2] Document Family means a group of related documents, including: (1) paper documents that were grouped together or physically attached by clips, staples, binding, folder, etc.; (2) email with its attachment(s); and (3) files with embedded documents

| | |
|---|---|
| **TimeSent** | TimeSent field from email (format 1:16 or 13:16:34). |
| **Redacted** | "Yes" if the document has been redacted. |
| **Confidential** | Confidential Designation (if any). |
| **MD5Hash** | The MD5 hash value calculated when the file was collected or processed. |
| **Orig_File Paths** | Path to location from which original file was collected. If production was deduplicated, include all file paths from which original files were collected. |
| **NATIVELINK** | The path to the native file on the production media. |
| **Native_filename** | Original name of the native file when the file was collected or processed. |
| **Text File Path** | Path to the text file on the production media. |
| **Date File Created** | The date the ESI was created. |
| **Time File Created** | The time the file was created (format 1:16 or 13:16:34). |
| **Date File Last Modified** | The date the ESI was last modified. |
| **Time Modified** | The time the ESI was last modified (format 1:16 or 13:16:34). |
| **File Size** | The file size in bytes. |
| **File Ext.** | The file extension associated with the file. |
| **Confidentiality** | Confidential treatment requested. |
| **Redacted** | Indicates where a record contains redactions. |