IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TENNESSEE STATE CONFERENCE OF THE NAACP, et al., <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM B. LEE, in his official capacity as Governor of the State of Tennessee, et al., <br><br> Defendants. | Case No. 3:23-cv-00832 <br><br> Judge Eric Murphy <br><br> Judge Eli Richardson <br><br> Judge Benita Pearson |

**REPLY IN SUPPORT OF THE
JOINT MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | The Lawsuit Is Barred By Laches | 1 |
| II. | The Complaint Does Not State Racial Gerrymandering Claims | 1 |
| III. | The Complaint Does Not State Intentional Discrimination Claims | 3 |
| IV. | Governor Lee Should Be Dismissed From This Action | 4 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Artists Picture Corp. v. Rhodes*,
   679 F.2d 656 (6th Cir. 1982) ................................................................................................. 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 1

*Easley v. Cromartie*,
   532 U.S. 234 (2001) ............................................................................................................... 1

*EMW Women's Surgical Ctr., PSC v. Beshear*,
   920 F.3d 421 (6th Cir. 2019) ................................................................................................. 5

*Fletcher v. Lamone*,
   831 F. Supp. 2d 887 (D. Md. 2011) ...................................................................................... 2

*Hein v. Freedom from Religion Found.*,
   551 U.S. 587 (2007) ............................................................................................................... 5

*Higginson v. Becerra*,
   363 F. Supp. 3d 1118 (S.D. Cal. 2019) ................................................................................. 4

*LensCrafters, Inc. v. Sundquist*,
   184 F. Supp. 2d 753 (M.D. Tenn. 2002) ............................................................................... 5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................... 5

*Russell v. Lundergan-Grimes*,
   784 F.3d 1037 (6th Cir. 2015) ............................................................................................... 4

*S.C. State Conference of the NAACP v. Alexander*,
   No. 21-cv-03302 (D.S.C. May 6, 2022), Dkt. 266-2 ............................................................. 2

*Territory of Alaska v. Am. Can Co.*,
   358 U.S. 224 (1959) ............................................................................................................... 3

*Universal Life Church Monastery Storehouse v. Nabors*,
   35 F.4th 1021 (6th Cir. 2022) ............................................................................................... 5

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ............................................................................................................... 3

*Ex Parte Young*,
   209 U.S. 123 (1908) .......................................................................................................... 4, 5

The Panel should grant the Joint Motion. The Complaint comes too late to surmount laches, pleads too little to plausibly show racial considerations predominated over lawmakers' plainly partisan ends, and presents no proper claim against Governor Lee. The Opposition does not meaningfully address these multifold failings. Instead, it seeks to punt on policing Plaintiffs' undue delay, neglects binding precedent on racial gerrymandering claims, doubles down on defective discriminatory-intent evidence, and glosses over Sixth Circuit decisions that dictate the Governor's dismissal.

## I. The Lawsuit Is Barred By Laches.

Rather than dispute that laches potentially applies, the Opposition principally argues the issue should be decided later. Opp. 6–9. Because the Complaint itself confirms the eighteen-month delay, Memo. In Support of Mot. to Dismiss 10 (Dkt. 43) ("Mot."), it is appropriate to adjudicate this issue now, *id.* at 9. That delay is unreasonable and prejudicial as a matter of law. Permitting the belated challenge prejudices Tennessee by creating electoral instability and injecting uncertainty into the political process—for the State, for potential candidates, and for the voters. *Id.* at 11–12.

## II. The Complaint Does Not State Racial Gerrymandering Claims.

The Panel should dismiss the racial gerrymandering claims because Plaintiffs did not plausibly allege that "race rather than politics *predominantly* explains" the challenged maps. *Easley v. Cromartie*, 532 U.S. 234, 243 (2001). The Complaint needed to account for this "obvious alternative explanation," but did not even try. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009) (citation omitted).

Plaintiffs do not dispute that the Complaint *never* even mentions partisanship, let alone predominance over partisan objectives. The Opposition (at 14) nonetheless objects that "very few racial gerrymandering claims are decided by way of a motion to dismiss." But there is no racial-gerrymandering exception to federal pleading standards. If anything, Plaintiffs' chief comparator case—NAACP's suit against South Carolina—only underscores this Complaint's deficiencies. *Id.* Unlike here, the South Carolina plaintiffs included allegations addressing why partisanship did not

explain the challenged districts. *See* 3d. Am. Compl. ¶¶ 157–59, *S.C. State Conference of the NAACP v. Alexander*, No. 21-cv-03302 (D.S.C. May 6, 2022), Dkt. 266-2. Plaintiffs' stark omission of similar allegations makes this case far weaker. The Opposition's other examples (at 14) either did not assess predominance-based arguments or did not involve gerrymandering, so do not help Plaintiffs either.[1]

The Opposition (at 14) initially dismisses partisanship as irrelevant because the maps were allegedly justified by population equalization. But that does not relieve Plaintiffs of *their* burden to address partisanship given the significant correlation between race and political affiliation. As Defendants argued, *Cromartie II* requires the Complaint to explain how "'the General Assembly 'could have achieved its legitimate political objectives in alternative ways that are comparably consistent with traditional redistricting principles' yet promote 'significantly greater racial balance.'" Mot. 17 (citation omitted). The Complaint's silence on that score bars the gerrymandering claims.

Plaintiffs do not dispute the race-party correlation. Indeed, the Opposition asserts (at 14) that "whether partisanship" explains the maps "is precisely the issue that will be tried in this case." Conceding the centrality of partisanship condemns the Complaint, which omits allegations showing that the General Assembly "moved [minority voters] from one district to another because they were [minorities] and not simply because they were Democrats." *Fletcher v. Lamone*, 831 F. Supp. 2d 887, 901 (D. Md. 2011) (three-judge panel). The Opposition's unsupported contention (at 13) that the partisanship inquiry is too "sensitive" to play out at the pleading stage would fast track every racial gerrymandering claim straight to discovery and trial. Blackletter pleading rules and gerrymandering precedents prohibit Plaintiffs' approach.

---

[1] *Common Cause* and *Contreras* denied motions to dismiss on mootness grounds, while the cited *Abbott* decision did not involve gerrymandering. Order, *Common Cause Fla. v. Byrd*, No. 22-cv-109 (N.D. Fla. Nov. 8, 2022), Dkt. 59; Order, *Contreras v. Ill. State Bd. of Elections*, No. 21-cv-3139 (N.D. Ill. Aug. 23, 2021), Dkt. 67; Order, *LULAC v.* Abbott, No. 21-cv-259 (W.D. Tex. Jan. 18, 2022), Dkt. 675.

Nor does the Opposition's focus on communities of interest, compactness, and voter-population demographics save the gerrymandering claims. Opp. 15–18. Plaintiffs do not dispute that those allegations are equally consistent with "an inference of partisan intent." Mot. 15 (citation omitted). These factors thus fall short of plausibly alleging racial predominance. Mot. 13–17.

### III. The Complaint Does Not State Intentional Discrimination Claims.

The Panel should dismiss the intentional discrimination claims because the Complaint does not plausibly allege any discriminatory effect or discriminatory intent. Mot. 17–26.

<u>Public Input</u>. The Complaint—not "extra-pleading allegations," Opp. 22—establishes the public's ample opportunity to comment during redistricting, Mot. 19–21.[2] The Opposition (at 21) claims that public input only occurred "*before* any of the official maps" were "released to the public and adopted." Yet the Complaint (at ¶ 92) shows otherwise, alleging that "[p]ublic comment was permitted" during a hearing that postdated the release of the maps and preceded their adoption.

<u>Public Disclosure</u>. The Opposition claims some committee members did not see the map before the final vote. Opp. 22. That does not suggest race discrimination because the Complaint never alleges that was a "[d]epartur[e] from the normal [redistricting] procedure," *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977), a process notorious for partisan gamesmanship.

<u>Timeline</u>. Plaintiffs' allegations, not Defendants' "extra-pleading opinion," Opp. 22, show that "the redistricting process was not 'unusually rushed,'" *id.* The Complaint alleges the General Assembly took eleven days to approve the Senate map and twelve days to approve the congressional map. *See* Mot. 21–22. But judicially noticeable legislative materials confirm that the General Assembly had only

---

[2] The Opposition disputes what materials are subject to judicial notice. Opp. 4–5. But Plaintiffs cannot ignore basic and judicially noticeable facts about the timeline of legislative enactments, statements offered at public hearings, and the identity of participants in the legislative process. *See Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27 (1959).

3

three days from introduction to approval in 2012.³ So this past cycle was more protracted than past practice. Defendants' Motion did not "concede" otherwise, Opp. 22, but instead noted that, should the Panel deem this historically *lengthy* process too speedy, the pandemic provides an obvious explanation as other courts have recognized, *see* Mot. 21–22.

<u>Legislative Consideration</u>. The Opposition claims that "only the official maps submitted by the committees ever received a vote" and that "no community maps were" "formally considered." Opp. 22. That is because of a parliamentary misstep from Democratic lawmakers—not race discrimination. No vote occurred because nobody moved to adopt those maps.⁴

<u>History of Allegedly Discriminatory Actions</u>. Defendants detailed why the voter-registration legislation, the divisive-concepts law, the Metro Nashville disputes, the expulsion votes, and isolated statements from lawmakers do not evince discriminatory intent. Mot. 22–25. The Opposition ignores those arguments and attacks a straw man. Of course the presumption of good faith does not "operat[e] as a matter of law to preclude allegations of racial discrimination." Opp. 23. But that presumption applies even at the motion-to-dismiss stage and the presumption must be overcome to state a plausible discrimination claim. *See Higginson v. Becerra*, 363 F. Supp. 3d 1118, 1125–28 (S.D. Cal. 2019). The allegations here fall far short of that pleadings-stage burden. Mot. 22–25.

**IV.     Governor Lee Should Be Dismissed From This Action.**

<u>Sovereign Immunity</u>. The Opposition claims that no "special relation" to the challenged statute "is required" to abrogate immunity. Opp. 26. That cannot be reconciled with *Russell v. Lundergan-Grimes*, which quotes *Ex Parte Young* directly, and explains that "*Young* does not reach state officials who lack a 'special relation to the particular statute' and '[are] not expressly directed to see to

---

³ Tennessee General Assembly, SB 1515 Bill History, https://bit.ly/40DEzsw; Tennessee General Assembly, SB 1514 Bill History, https://bit.ly/3FZVzQf.

⁴ Tennessee House of Representatives, House Select Committee on Redistricting 34:10–36:05 (Jan. 12, 2022), https://bit.ly/3QIA2Aq.

4

its enforcement.'" 784 F.3d 1037, 1047 (6th Cir. 2015) (citation omitted). In *Ex Parte Young*, the attorney general was a proper defendant because his specific statutory authority to "cause proceedings to be instituted" sufficiently "connected him with the duty of enforcement." 209 U.S. 123, 161 (1908). Contrary to the Opposition, he was not a proper defendant based on his general authority to enforce state law. Because Plaintiffs allege no facts showing Governor Lee's "special relation" to the challenged maps, they cannot overcome sovereign immunity and the Governor should be dismissed.

*Allied Artists* does not make the Governor a proper defendant. Plaintiffs never dispute that *Whole Woman's Health* effectively abrogates that decision. Mot. 28. Moreover, it is Plaintiffs—not Defendants—who "misstat[e] [that case's] holding." Opp. 26. *Allied Artists* recognized that, unless the Governor could be sued based on his general enforcement authority, the plaintiffs "would be unable to vindicate the alleged infringement of their constitutional rights" without violating the challenged law. *Allied Artists Picture Corp. v. Rhodes*, 679 F.2d 656, 665 n.5 (6th Cir. 1982). Here, because other defendants wield "the enforcement responsibility that [*Young*] describes," "there is no need to rely on the governor's general obligation to enforce the laws of [Tennessee]"—thus making the Governor immune. *LensCrafters, Inc. v. Sundquist*, 184 F. Supp. 2d 753, 759 (M.D. Tenn. 2002); *EMW Women's Surgical Ctr., PSC v. Beshear*, 920 F.3d 421, 446 n.25 (6th Cir. 2019).

<u>Standing</u>. The Opposition's standing argument proves too much. It claims the Governor can be sued because he signed the redistricting law and enforces state law. Opp. 28. But that would mean litigants always have standing to sue the Governor (or the U.S. President, for that matter) because those two prerequisites will be met in every case challenging the constitutionality of a statute. That is not the law. *See*, *e.g.*, *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022). Concluding otherwise would result in "government by injunction," *Hein v. Freedom from Religion Found.*, 551 U.S. 587, 612 (2007) (citation omitted), and vitiate the Executive's enforcement authority and responsibilities, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 576–77 (1992).

5

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

| | |
|---|---|
| ADAM K. MORTARA (BPR# 40089)<br>Lawfair LLC<br>40 Burton Hills Blvd., Suite 200<br>Nashville, TN 37215<br>(773) 750-7154<br>mortara@lawfairllc.com | */s/ Philip Hammersley*<br>PHILIP HAMMERSLEY (BPR# 041111)<br>  Assistant Solicitor General<br>WHITNEY D. HERMANDORFER (BPR# 041054)<br>  Director of Strategic Litigation<br>MIRANDA H. JONES (BPR# 036070)<br>  Senior Assistant Attorney General<br>RYAN NICOLE HENRY (BPR# 40028)<br>  Assistant Attorney General<br>Office of the Tennessee Attorney General<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>(615) 532-2935<br>philip.hammersley@ag.tn.gov<br>whitney.hermandorfer@ag.tn.gov<br>miranda.jones@ag.tn.gov<br>ryan.henry@ag.tn.gov |

**Counsel for Defendants**

# CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2023, the undersigned filed the foregoing document via this Court's electronic filing system, which sent notice of such filing to the following counsel of record:

| COUNSEL OF RECORD | PARTY REPRESENTED |
|---|---|
| Phillip F. Cramer<br>Sperling & Slater<br>150 3rd Avenue South, Suite 1100<br>Nashville, TN 37201<br>Tel.: 312-224-1512<br>pcramer@sperling-law.com<br><br>Jon Greenbaum*<br>Ezra D. Rosenberg*<br>Pooja Chaudhuri*<br>Lawyers' Committee for Civil Rights Under Law<br>1500 K Street NW, Suite 900<br>Washington, DC 20005<br>Tel.: 202-662-8600<br>jgreenbaum@lawyerscommittee.org<br>erosenberg@lawyerscommittee.org<br>pchaudhuri@lawyerscommittee.org<br><br>Jeffrey Loperfido*<br>Mitchell D. Brown*<br>Southern Coalition for Social Justice<br>1415 West Highway 54, Suite 101<br>Durham, NC 27707<br>Tel.: 919-323-3380<br>jeffloperfido@scsj.org<br>mitchellbrown@scsj.org<br><br>George E. Mastoris*<br>Michelle D. Tuma*<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166 | Plaintiffs Tennessee State Conference of the NAACP, League of Women Voters of Tennessee, The Equity Alliance, Memphis A. Philip Randolph Institute, African American Clergy Collective of Tennessee, Judy Cummings, Brenda Gilmore, Ophelia Doe, Freda Player, and Ruby Powell-Dennis |

| | |
|---|---|
| George E. Mastoris*<br>Michelle D. Tuma*<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166<br>Tel.: 212-294-6700<br>gmastoris@winston.com<br>mtuma@winston.com | |
| Adam K. Mortara (BPR# 40089)<br>Lawfair LLC<br>40 Burton Hills Blvd., Suite 200<br>Nashville, TN 37215<br>(773) 750-7154<br>mortara@lawfairllc.com<br><br>Whitney D. Hermandorfer<br>   Director of Strategic Litigation<br>Miranda H. Jones<br>   Senior Assistant Attorney General<br>Ryan Nicole Henry<br>   Assistant Attorney General<br>Philip Hammersley<br>   Assistant Solicitor General<br>Office of the Tennessee Attorney General<br>P.O. Box 20207<br>Nashville, Tennessee 37202<br>(615) 532-2935<br>whitney.hermandorfer@ag.tn.gov<br>miranda.jones@ag.tn.gov<br>ryan.henry@ag.tn.gov<br>philip.hammersley@ag.tn.gov<br><br>**Counsel for Defendants** | Defendants William B. Lee, in his official capacity as Governor of the State of Tennessee, Tre Hargett, in his official capacity as Secretary of State of the State of Tennessee, Mark Goins, in his official capacity as Coordinator of Elections for the State of Tennessee, the State Election Commission, and Donna Barrett, Judy Blackburn, Jimmy Eldridge, Mike McDonald, Secondra Meadows, Bennie Smith and Kent Younce, in their official capacities as members of the State Election Commission |

                                                  */s/ Philip Hammersley*
                                                PHILIP HAMMERSLEY (BPR# 041111)
                                                Assistant Solicitor General
                                                *Counsel for Defendants*